**E. E. CLOER GENERAL CONTRACTOR, Inc., Appellant,**

**v.**

**TIMBER STRUCTURES, Inc., Appellee.**

**No. 15538.**

Court of Civil Appeals of Texas.

Fort Worth.

July 2, 1954.

Rehearing Denied Sept. 17, 1954.

Stone, Agerton, Parker & Kerr, R. F. Snakard, and Walter E. Jordan, Fort Worth, for appellant.

Alexander & Martin and Richard F. Martin, Fort Worth, for appellee.

RENFRO, Justice.

Suit was brought by Timber Structures, Inc., an Oregon corporation, appellee, against E. E. Cloer General Contractor, Inc., with its principal office and place of business in Fort Worth, Texas, appellant, alleging that on or about March 12, 1952, appellee agreed to sell to appellant certain materials, mostly lumber, in the amount of $47,668; the materials were furnished to appellant who has paid $43,310.27 of the purchase price but has refused to pay the balance of $4,594.52.

The appellant answered that a substantial part of the materials furnished by appellee failed to meet the specifications of the contract, and filed a cross-action praying for the sum of $9,487.86 as expenses incurred by it in replacing the defective materials furnished by appellee.

The original sales order, dated March 12, 1952, showed, among other notations not necessary to set out: "Invoice: E. E. Cloer, Inc., Post Office Box 1506, Harlingen, Texas; ship to: E. E. Cloer, Inc., Harlingen, Texas; shipping instructions: rail."

Immediately following the above appeared the following paragraph: "Furnish the following materials, with all hardware, except split ring connectors, completely fabricated (except as noted), and knocked down FOB our plant, Portland, Oregon, with freight allowed to Harlingen, Texas." In the right-hand column appeared the figure $50,422.00. Then followed a detailed list of the materials to be furnished. After a description of the items appeared this paragraph: "Lumber grades for Items 1, 2 and 3 to be in accordance with Para. 204–214 or 604–614, or better, W.C.L.A. Rules No. 14. Lumber grades for Item 4, to be Douglas Fir or West Coast Hemlock to meet the following minimum requirements: * * *." A sales change order deleted certain items, leaving a total balance of $47,668 worth of materials to be shipped. On April 9, 1952, appellant sent a confirmation letter to appellee, which was in substantially the same form as the sales order. The materials ordered were to be used by appellant in the construction and rehabilitation of the Radar Maintenance Building, the Automotive Shop Building, the Base Warehouse, and the Academic Building at the Harlingen Air Force Base. The evidence showed that sometime after the materials were unloaded at Harlingen the Army Engineers rejected, as failing to meet specifications, 47,091 board feet of the lumber intended for the Base Warehouse.

The trial court submitted the following issue to the jury: "Do you find from a preponderance of the evidence that any part of the timbers furnished by Timber Structures, Inc. to defendant Cloer for use on the Base Warehouse at Harlingen A. F. Base was, at the time of loading on the cars at Portland, Oregon below the grade provided for in the contract between plaintiff and defendant? Answer Yes, or No." The jury answered "No." Other issues, being conditioned upon an affirmative answer to issue No. 1, were not answered.

The appellant first contends the court erred in submitting to the jury, over its objection, special issue No. 1 because it assumed the point of delivery to be Portland, Oregon, when the point of delivery was a question of fact to be determined by the jury; and next contends the court erred in refusing to submit special issues which would have required the jury to find the point of delivery of the materials according to the intention of the parties to the contract and whether or not at the time and place of delivery any part of the timbers was below the grade provided for in the contract.

■ The evidence supports the finding that no part of the timbers was below contract grade at the time they were loaded on cars at Portland. It likewise appears from the record that at some time after the timbers were unloaded at Harlingen, Texas, certain of the timbers intended for the Base Warehouse were found not to meet the specifications of the contract. The gist of appellant's argument is that the contract does not show on its face the place of delivery and that the provision, f. o. b. Portland, Oregon, refers only to the price of the lumber and not to the place of delivery; that the f. o. b. provision standing alone is not sufficient and controlling evidence of the place of delivery; that the phrase, with freight allowed to Harlingen, Texas, means freight charges were paid by the appellee and clearly demonstrates the intent of the parties that delivery of the lumber was to be in Harlingen; that the contract between the parties provided the lumber was to be in accordance with plans and specifications for the rehabilitation and construction job at Harlingen Air Force Base and since the plans and specifications provided for inspection by the Army engineers, this obviously meant that the type and grade of lumber was to be inspected by Army engineers at Harlingen, and the very nature of the construction job for which this lumber was furnished signifies that delivery was to be in Harlingen in the grade and quality ordered.

In Alexander v. Heidenheimer, Tex.Com. App., 221 S.W. 942, 944, the price of certain material was given as "$1.60 f. o. b. point of origin." The court held: "It is an established rule of law that when property is

delivered to a carrier by the vendor, as directed by the vendee, or where the contract is silent as to the place of delivery, delivery to the carrier operates as a delivery to the vendee and passes title to him; and, if the property at the time of such delivery is in the condition as to quality which the vendee is entitled to receive, this will constitute a performance of the agreement of sale; and any loss of the property thereafter will fall, not upon the vendor, but upon the vendee."

In Adkins-Polk Co. v. John Barkley & Co., Tex.Civ.App., 297 S.W. 757, 758, the contract read: "500 barrels of San Francisco clarified sugar at 7¼ cents per pound net f. o. b. cars shipping point, New Orleans rate". The court held it was not error for the court to inquire if the sugar was in conformity with samples submitted when delivered on board the cars at Dolsen Switch, Louisiana, and said, citing McLane Co. v. Swernemann & Schkade, Tex.Civ. App., 189 S.W. 282: " 'If the goods are to be shipped to the purchaser, in the absence of an agreement to the contrary, delivery to a common carrier is delivery to the purchaser,' and that the quality of the goods is to be determined at the place of sale, that is, at the point of shipment. Inspection may be made at the place to which the goods are shipped, but its effect would be only to determine the condition of the goods at the point of shipment."

The fact that goods are to be shipped to a certain place does not show that the seller is to deliver them at such place. In the absence of an agreement to deliver at a particular place, the presumption is that delivery is to be made at the place of sale. If the goods are to be shipped to the purchaser, in the absence of an agreement to the contrary, delivery to a common carrier is delivery to the purchaser. Robert McLane Co. v. Swernemann, Tex.Civ.App., 189 S.W. 282. See also F. L. Shaw Co. v. Coleman, Tex.Civ. App., 236 S.W. 178; Walker-Smith Co. v. Jackson, Tex.Civ.App., 123 S.W.2d 993.

In Lipshitz v. Earl Fruit Co. of the Northwest, Tex.Civ.App., 265 S.W. 1048, 1050, it was said: "Defendants do not deny that it was a f. o. b. shipment, with draft attached to bill of lading. In such shipment title passed to defendants at point of origin if the apples were then of the quality represented."

Under authority of the above cited cases, we have concluded that the action of the trial court in treating Portland as the place of delivery must be sustained, and he did not err in refusing to give the requested issues.

From a study of the contract it does not appear that "FOB our plant Portland, Oregon" referred to price alone. The contract provided for shipping instructions by rail and contained a detailed description of the materials to be supplied, time of shipment, etc.

As a general rule, when goods are sold f. o. b. at the point of origin, such point, and not the point of destination, is to be deemed the place of delivery. 37 Tex.Jur., p. 371; 77 C.J.S., Sales, § 143, p. 860.

While there are exceptions to the general rule, we believe the contract between appellant and appellee does not come within any of the exceptions.

The agreement to ship by rail, "knocked down FOB our plant, Portland, Oregon," fixed the place of delivery at Portland, Oregon, and appellee's duty was to furnish materials meeting the contract specifications at that place.

We therefore overrule appellant's points of error and affirm the judgment of the trial court.