HAYWARD *v.* POSTMA

1. SALES—SECURED TRANSACTIONS—RISK OF LOSS—PARTIES' AGREE-MENT—INSURANCE.

Security agreement clause declaring that the buyer must at all times keep the goods fully insured is not equivalent to a contrary agreement of the parties within the Uniform Commercial Code provision relating to time when risk of loss passes from seller to buyer (MCLA § 440.2509[4]).

2. SALES—RISK OF LOSS—STATUTES—POLICY.

Uniform Commercial Code provision that the risk of loss passes to the buyer on his receipt of the goods if the seller is a merchant and if otherwise, the risk passes to the buyer on tender of delivery covers the common situation where parties have not agreed on who shall bear the risk of loss; the theory of the provision is that a merchant who is to make physical delivery at his own place continues to control the goods and can be expected to insure his interest in them, while the buyer, having no control of the goods, is extremely unlikely to carry insurance on goods not yet in his possession (MCLA § 440.2509[3]).

3. SALES—SECURED TRANSACTIONS—RISK OF LOSS—INSURANCE.

Security agreement language that the buyer agrees to keep the goods insured at all times does not sufficiently apprise the buyer that he bears the risk of loss on goods for which he has contracted but has not yet received.

4. SALES—RISK OF LOSS—SHIFTING RISK—BUYER'S RISK.

A seller who wants to shift the risk of loss to the buyer before the buyer receives the goods must make his intent very clear to the buyer, because shifting the risk of loss to the buyer in such a situation is very unusual.

REFERENCE FOR POINTS IN HEADNOTES
[1–5] 46 Am Jur, Sales §§ 279, 280.

5. SALES—SECURED TRANSACTIONS—RISK OF LOSS—PARTIES' AGREE-
MENT—INSURANCE.

    Fine print in a security agreement that the buyer must at all
    times keep the goods fully insured does not shift the statu-
    torily-imposed risk of loss, since "at all times" commonly
    means "at all times after one gets possession."

Appeal from Kent, Stuart Hoffius, J. Submitted
Division 3 February 4, 1971, at Grand Rapids.
(Docket No. 9418.) Decided March 26, 1971. Leave
to appeal denied May 25, 1971, 384 Mich 843.

Complaint by Donald Hayward against Herbert
F. Postma to determine risk of loss under sales con-
tract. Judgment for plaintiff. Defendant appeals.
Affirmed.

*Warner, Norcross & Judd* (by *J. M. Neath, Jr.,*
and *Edward Malinzak*), for plaintiff.

*Mohney, Norris, Goodrich, Titta & Carpenter* (by
*Reginald L. Norris*), for defendant.

Before: FITZGERALD, P. J., and V. J. BRENNAN
and T. M. BURNS, JJ.

V. J. BRENNAN, J. From a judgment in favor of
the plaintiff buyer in an action to determine risk of
loss under a sales contract, defendant appeals.

On February 7, 1967, the plaintiff agreed to pur-
chase a 30-foot Revel Craft Playmate Yacht for
$10,000. The total purchase price included a num-
ber of options which the dealer was to install after
he received the boat from the manufacturer. The
parties agreed that defendant would deliver the
boat to a slip on Lake Macatawa in or about April,
1967.

On March 1, 1967, shortly after the boat arrived
at the dealer's showroom, plaintiff executed a secur-

ity agreement in favor of the defendant seller along with a promissory note in the amount of $13,095.60. The note was subsequently assigned to Michigan National Bank. Clauses 7 and 8 of the security agreement provided:

"(7) Buyer will at all times keep the goods in first class order and repair, excepting any loss, damage or destruction which is fully covered by proceeds of insurance;

"(8) Buyer will at all times keep the goods fully insured against loss, damage, theft and other risks, in such amounts and companies and under such policies * * * satisfactory to the secured party, which policies shall specifically provide that loss thereunder shall be payable to the secured party as its interest may appear * * * ."

In April of 1967, prior to delivery of the boat, a fire on defendant's premises destroyed part of his inventory of boats including the Revel Craft Playmate. Neither party had obtained insurance although both the seller and the buyer had an insurable interest[1] in the boat. Plaintiff requested the defendant to pay off the promissory note or reimburse him for payments made, and when he refused, the plaintiff started suit in Kent County Circuit Court. The lower court held that the seller bore the risk of loss and entered judgment for plaintiff.

There is little dispute as to the facts of this case; the entire controversy centers around a single provision of the Uniform Commercial Code. Under the code,[2] risk of loss is no longer determined by which party has title to the goods at the time of the loss. It is determined, instead, by rules in the code cover-

---

[1] See MCLA § 440.2501 (Stat Ann 1964 Rev § 19.2501).

[2] MCLA § 440.1101 *et seq.* (Stat Ann 1964 Rev § 19.1101 *et seq.*). Hereinafter the provisions of the Code will be referred to by section number only.

ing specific fact situations independent of title. The question of risk of loss in the absence of breach of the sale contract is covered in § 2509 which provides in subsection (3):

" * * * risk of loss passes to the buyer on his receipt of the goods if the seller is a merchant; otherwise the risk passes to the buyer on tender of delivery."

But for the next subsection of the code, the solution to this case would be clear, since it is undisputed that the seller was a merchant[3] and that the buyer had not received the goods.

The code further provides at § 2509(4) that:

"The provisions of this section are subject to contrary agreement of the parties and to the provisions of this article on sale on approval (section 2327) and on effect of breach on risk of loss (section 2510)."

It is the seller's claim that clause 8, *supra,* in the security agreement declaring that the buyer must "at all times keep the goods fully insured" is equivalent to a contrary agreement of the parties. We do not agree.

The general approach of Article 2 of the code is that freedom of contract prevails; the greater part of it is concerned with detailing what happens where the contract is silent on a particular point. Such is the purpose of § 2509(3). This provision was meant to cover the common situation where parties have not agreed on who shall bear the risk of loss. In deciding that the seller should bear the risk of loss while the goods are still in his hands, the drafters give the following explanation in Code Comment No 3:

---

[3] See § 2104.

"The underlying theory of this rule is that a merchant who is to make physical delivery at his own place continues meanwhile to control the goods and can be expected to insure his interest in them. The buyer, on the other hand, has no control of the goods and it is *extremely unlikely* that he will carry insurance on goods not yet in his possession." (Emphasis supplied.)

The code drafters correctly observed that it would be highly unusual for the average consumer to carry insurance on an item of personal property weeks or even months before it is delivered to him. The question in our case, then, is whether boilerplate language in a security agreement to the effect that the buyer agrees to keep the goods insured at all times is sufficient to apprise the buyer that he bears the risk of loss on goods he has contracted for, but has not yet received. We think not.

On the contrary, we feel that a contract which shifts the risk of loss to the buyer before he receives the goods is so unusual that a seller who wants to achieve this result must make his intent very clear to the buyer. Fine print in a security agreement concerning insurance does not achieve this result. Clause 8 is entirely vague when it states that insurance is to be carried "at all times". Common experience would dictate that the words "at all times" mean "at all times after one gets possession". This interpretation of the clause is borne out if we consider the language immediately preceding it:

"(7) Buyer will at all times keep the goods in first class order and repair, excepting any loss, damage or destruction which is fully covered by proceeds of insurance;"

Clause 7, including its mention of insurance which is later expanded upon in clause 8, apparently as-

sumes that the buyer (debtor) is in possession of the collateral. One cannot keep in repair what he does not have. Finally, risk of loss is nowhere mentioned in clause 8, and under the circumstances it cannot readily be inferred. We, therefore, hold that the parties to this contract had not agreed that the buyer would bear the risk of loss prior to his receipt of the goods and that the seller bears the loss under § 2509(3).

To hold otherwise would be to set a trap for the unwary. This is especially evident in the present case where the trial court found as a fact that the only reason for entering into the security agreement was to allow the *seller* to discount the paper to a bank and use the proceeds to pay the manufacturer for the boat and thus avoid financing ("floor planning") the purchase from the manufacturer. The idea that clause 8 of the security agreement was equivalent to an "agreement contrary" under § 2509 (4) was clearly an afterthought.

We do not mean to say that parties may not validly agree on who bears the risk of loss; rather, we hold that if they intend to shift that burden to the buyer before his receipt of the goods, they must do so in clear and unequivocal language.

For the foregoing reasons, the judgment of the lower court is affirmed.

Affirmed.

All concurred.