John B. CAUDLE, Appellant,

v.

SHERRARD MOTOR COMPANY,
Appellee.

No. 18587.

Court of Civil Appeals of Texas,
Dallas.

June 19, 1975.

Rehearing Denied July 7, 1975.

Ed Walts, Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellant.

Tom J. Stollenwerck, Touchstone, Bernays & Johnston, Dallas, for appellee.

AKIN, Justice.

The question on this appeal is whether the risk of loss of a house trailer had passed from the seller, Sherrard Motor Company,

to the buyer, Caudle, under Tex.Bus. & Comm. Code Ann. § 2.509 (Tex.UCC 1968) before the house trailer was stolen from the seller's premises.

The relevant facts are undisputed. On February 10, 1972, plaintiff Sherrard Motor Company and defendant John Caudle entered into a contract for the purchase of a house trailer. It provided for a cash down payment of $2,685 and a balance of $4,005 in the form of a note payable to Sherrard. This contract was assigned with recourse to the Citizens National Bank of Denison, Texas, by Sherrard on the date executed. While Sherrard was making the trailer ready for the defendant, Caudle received a telephone call from his business office advising that he should return immediately to Dallas. Since the trailer was not ready, Caudle told Sherrard that he would return later to Denison and take possession of the trailer. Before Caudle returned and sometime between February 12 and 14, 1972, the house trailer was stolen from plaintiff's place of business. Upon learning of the theft, Caudle stopped payment on the check he had given Sherrard as down payment for the trailer. Sherrard then sued Caudle on the contract of sale for the contract price.

In answer to special issues, the jury found that a contract had been entered into between the parties; that Caudle breached the contract; and that Sherrard sustained no damage as a result of the breach by Caudle. The trial court, upon motion by Sherrard, entered a judgment *non obstante veredicto* in Sherrard's favor in the sum of $6,285.70. Caudle appeals from this judgment.

Caudle argues that the trial court erred in failing to grant Caudle's motion for an instructed verdict because there is no evidence that the contract was breached by Caudle. We agree. We hold that the contract failed as a matter of law for want of consideration since the trailer was stolen *before* the risk of loss under Tex.Bus. & Comm.Code Ann. § 2.509 (Tex.UCC 1968)

had passed to Caudle. We, therefore, reverse and render the judgment of the trial court.

In making this determination, we were presented with three principal questions. First, had the risk of loss passed to the buyer, Caudle, before the trailer was stolen, because the trailer was held by a bailee, Sherrard, to be delivered without being moved pursuant to Tex.Bus. & Comm.Code Ann. § 2.509(b) (Tex.UCC 1968)? Secondly, did the contract provide that the risk of loss passed to Caudle when the contract was signed by the parties under Tex.Bus. & Comm.Code Ann. § 2.509(d) (Tex.UCC 1968)? Thirdly, had the risk of loss remained with the merchant-seller, Sherrard, because the trailer was stolen before the purchaser, Caudle, had taken actual physical possession of the goods pursuant to Tex. Bus. & Comm.Code Ann. § 2.509(c) (Tex.UCC 1968)? We answer questions one and two in the negative and question three in the affirmative.

■ It is plaintiff's contention that the risk of loss had passed to the defendant before the trailer's disappearance under § 2.509(b)(2), which provides:

> Where the goods are held by a bailee to be delivered without being moved, the risk of loss passes to the buyer
>
> . . . . .
>
> (2) on acknowledgement by the bailee of the buyer's right to possession of the goods.

Plaintiff contends that it was acting as a bailee while the trailer remained on its premises and that by executing the contract, it had acknowledged the defendant's right to possession of the trailer. Plaintiff further argues that because it did not agree to deliver the trailer to Caudle in Dallas, the trailer was to be delivered to Caudle "without being moved." These arguments, however, erroneously assume that the plain-

tiff is a bailee under the Code.[1] It is apparent that the drafters of the Code contemplated a common law commercial bailee, such as a warehouseman, when using the term "bailee" in § 2.509(b). Certain analogies in the Code compel this conclusion. For example, a bailee is defined in Tex.Bus. & Comm.Code Ann. § 7.102(a)(1) (Tex.UCC 1968) as a person "who by a warehouse receipt, bill of lading or other document of title acknowledges possession of goods and *contracts to deliver them.*" [Emphasis added.] Section 2.509(b)(1) speaks of goods held by a bailee to be delivered to the buyer on the buyer's receipt of a negotiable document of title and § 2.509(b)(3) speaks of the buyer's receipt of a non-negotiable document of title. A document of title "includes bill of lading, dock warrant, dock receipt, warehouse receipt . . .. To be a document of title a document must purport to be issued by or addressed to a bailee and purport to cover goods in the bailee's possession . . .." Tex.Bus. & Comm. Code Ann. § 1.201(15) (Tex.UCC 1968). A bill of lading is defined as "a document evidencing the receipt of goods for shipment issued by a person *engaged in the business* of transporting or forwarding goods . . .." Tex.Bus. & Comm.Code Ann. § 1.201(6) (Tex.UCC 1968) [Emphasis added.] Similarly, a warehouse receipt is defined as "a receipt issued by a person *engaged in the business* of storing goods for hire." Tex.Bus. & Comm.Code Ann. § 1.201(45) (Tex.UCC 1968) [Emphasis added.] Implicit in this language is the concept that the party who issues these documents and acknowledges the buyer's right to possession of the goods be in the business of storing goods for hire—a commercial bailee. This is not true here. We conclude, therefore, that the plaintiff was not a bailee under the Code. Hence, § 2.509(b) does not control the determination of whether the risk of loss had passed to the defendant.

Plaintiff contends further that if § 2.509(b) is inapplicable then the risk of loss passed to the defendant pursuant to § 2.509(d). This section provides that a buyer and seller may specifically enter into a contract contrary to the other provisions of § 2.509. Plaintiff argues that such a contrary agreement was made because the terms of the contract for the sale of the trailer provided that the risk of loss passed to the defendant when the contract was signed by the parties.

The pertinent clause of the sales contract states:

No transfer, renewal, extension or assignment of this agreement or any interest hereunder, and no loss, damage or destruction of said motor vehicle shall release buyer from his obligation hereunder.

We hold that this language is insufficient to constitute a "contrary agreement" between the parties pursuant to § 2.509(d). A contract which shifts the risk of loss to the buyer before he receives the merchandise is so unusual that a seller who desires to achieve this result must clearly communicate his intent to the buyer. Hayward v. Postma, 31 Mich.App. 720, 188 N.W.2d 31, 33 (1971); Comment, *Risk of Loss Under Section 2509 of the California Uniform Commercial Code*, 20 U.C.L.A.L.Rev. 1352, 1362 (1973). This clause was apparently intended to fix responsibility for loss *after the defendant had taken possession* of the trailer. This interpretation is consistent with other provisions of the contract. For example, the contract provides that the "buyer shall keep said motor vehicle in good order and repair . . .." It would indeed be difficult for the buyer to honor this responsibility without having acquired actual possession of the trailer. It is also apparent that the provisions of the contract were drafted for the benefit of a third party—

---

1. All references to the Code are to the Texas Business and Commerce Code Annotated (Tex.UCC 1968).

the bank or other lending institution to which the contract would be sold. The contract was assigned to the Citizens National Bank of Denison, Texas with recourse on Sherrard. Furthermore, since risk of loss is not specifically mentioned in the contract, we cannot say that an agreement to the contrary may be inferred from reading the document as a whole. We, therefore, conclude that it was not the intention of the parties to transfer risk of loss of the trailer *prior to delivery of possession to the buyer.* To hold otherwise would be to set a trap for the unwary. If parties intend to shift the burden of the risk of loss from the seller to the buyer before delivery of the goods, then such must be done in clear and unequivocal language.

 It is defendant's contention that pursuant to § 2.509(c) the risk of loss remained with the plaintiff because he had not taken actual physical possession of the trailer. We agree. That section provides,

> In any case not within Subsection (a) or (b),[2] the risk of loss passes to the buyer on his receipt of the goods if the seller is a merchant; otherwise the risk of loss passes to the buyer on tender of delivery.

To determine if this section applies, the following questions must be resolved: (1) was the plaintiff a merchant? and (2) did the defendant receive the trailer? The plaintiff is a merchant under Article 2 of the Code as it "deals in goods of the kind . . . involved in the transaction . . . ." § 2.104(a). The language "receipt of the goods" is defined in the Code as

"taking physical possession of them." § 2.103(a)(3). It is undisputed that the defendant never took physical possession of the trailer; therefore, he had not received the goods. Accordingly, we hold that the risk of loss did not pass to the buyer before the trailer was stolen. It follows, therefore, that no breach of contract occurred.

Our holding is in accordance with the underlying principles of § 2.509 dealing with risk of loss. Under the Uniform Commercial Code, the risk of loss is no longer determined arbitrarily by which party had title to the goods at the time of the loss.[3] Instead, as the drafters of the Code state: "The underlying theory of these sections on risk of loss is the adoption of the contractual approach . . . ." Uniform Commercial Code, § 2–509, Comment 1. For example, under Tex.Bus. & Comm.Code Ann. § 2.509(a)(1) and (2) (Tex.UCC 1968), the risk of loss depends on whether the goods are shipped by a carrier pursuant to a "destination" or "shipment" *contract.* In addition, § 2.509(d) provides that the buyer and seller are free to adjust by contract their rights and risks contrary to the other provisions of § 2.509. Subject to the placement of a contractual approach at the analytic center of risk of loss problems is the policy that a party who had control over the handling of goods should bear their loss. For example, under § 2.509(a)(1) and (2), the seller must bear the risk of loss until the goods reach the *control* of the carrier, if it is a "shipment" contract, or the buyer, if it is a "destination" contract. Strong policy reasons support this approach. The party

---

2. It has previously been established that subsection (b) does not apply and subsection (a) dealing with goods shipped by a carrier is likewise inapplicable.

3. Tex.Bus. & Comm.Code Ann. § 2.401 (Tex.UCC 1968) provides:

> Each provision of this chapter with regard to the rights, obligations and remedies of the seller, the buyer, purchaser or other third parties applies irrespective of title to the goods except where the provision refers to such title.

*See also* Duesenberg & King, Sales and Bulk Transfers Under the Uniform Commercial Code, §§ 8.01–8.03 (3 Bender's Uniform Commercial Code Service 1968); White & Summers, *The Uniform Commercial Code,* 134–40 (1972); Comment, *Risk of Loss Under the Uniform Commercial Code: The Unlamented Passing of Title,* 13 Kan.L.Rev. 565 (1965); Comment, *Risk of Loss Under the Uniform Commercial Code,* 7 Ind.L.Rev. 711, 713 (1974); Comment, *Risk of Loss Under Section 2509 of the California Uniform Commercial Code,* 20 U.C.L.A.L.Rev. 1352 (1973).

in control is in the best position to handle properly the goods, to contract for shipment with a reliable carrier, and to insure the goods.[4] This theory is particularly applicable when the buyer is not a merchant and is unfamiliar with the problems of handling the goods.

Illustrative of these principles is the decision of Ellis v. Bell Aerospace Corp., 315 F.Supp. 221 (D.Or.1970), where the vendee purchased a helicopter from the defendant-vendor, and authorized him to store the helicopter with a bailee. The helicopter was later flown back to the vendor's factory where the plaintiff was to be instructed in its operation. During this instruction, the aircraft crashed. The court concluded that the vendor could not transfer risk of loss to the buyer until the buyer had actually received the merchandise, even though the buyer had paid the full price and had been notified that the goods were at his disposal. The fact that the helicopter had been held by a bailee with the consent of the buyer was not sufficient to bring the contract under Uniform Commercial Code, § 2–509(2) [Tex.Bus. & Comm.Code Ann. § 2.509(b) (Tex.UCC 1968)], because the helicopter remained under the practical control of the vendor. The court further observed that a merchant who is to make delivery at his own place of business continues to maintain control over the goods and can be expected to carry insurance to protect his interest in them. On the other hand, the buyer has no control over the goods and may not have had the foresight to obtain insurance on the undelivered merchandise. Id. at 224. See also Baumgold Bros. v. Allan M. Fox Co., 375 F.Supp. 807 (N.D.Ohio 1973).

Accordingly, this cause is reversed and rendered.

4. Uniform Commercial Code, § 2–509, Comment 3 states:

 The underlying theory of this rule is that a merchant who is to make physical delivery at his own place continues meanwhile to control the goods and can be

expected to insure his interest in them. The buyer, on the other hand, has no control of the goods and it is extremely unlikely that he will carry insurance on goods not yet in his possession.