**ELLIOT VALVE REPAIR
CO., Appellant,**

v.

**B.J. VALVE & FITTING COMPANY,
Appellee.**

No. 01–83–784–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 7, 1984.

Rehearing Denied July 19, 1984.

Gary O. Brockway, Holtzman & Urquhart, Jack E. Urquhart, Holzman & Urquhart, Sousan D. Soussan, Richie & Greenberg, Houston, for appellant.

Douglas S. Johnston, Crady & Peden, Joan Campbell, Crady & Peden, Houston, for appellee.

Before BULLOCK, JACK SMITH and DUGGAN, JJ.

## OPINION

BULLOCK, Justice.

This is an appeal from a judgment in a non-jury trial awarding the appellee $7,500 damages and $2,850 attorney's fees in a suit on a sworn account because of the appellant's alleged failure to pay for a certain valve which the appellee allegedly sold to the appellant.

We reverse the judgment and render judgment for the appellant.

The trial court rendered findings of fact and conclusions of law that the appellant had agreed to purchase the valve from the appellee for $7,500; that the appellee deliv-

ered the valve and the appellant accepted it; that the appellant made no payment for the valve; that the appellant therefore owed the appellee the agreed purchase price of the valve; and that the appellee was entitled to reasonable attorney's fees of $2,850.

In 1977, the appellant sold and repaired valves used in the petrochemical industry. The appellee sold surplus valves at wholesale to the industry and to other distributors.

On approximately August 1, 1977, Bradshaw, the president of the appellee, received a telephone call from Robert Luna, an employee of the appellant, who inquired about an Alloyco No. 365, 10″ 150 pound Movel "Y" pattern Globe valve. Bradshaw testified that he obtained the valve from another dealer and that Luna, on behalf of the appellant, agreed to purchase the valve for $7,500. Luna at that time was an employee of the appellant in "inside sales," a term identifying an employee-salesperson. Testimony indicated that prior to this transaction, the appellee had had no business dealings with the appellant for over three years.

The appellee tendered the valve to a common carrier, Arrow Delivery Service, who the appellee claims delivered the valve to the appellant. When the appellant failed to pay for the valve, the appellee filed this suit.

The appellant presents twelve points of error, constituting two basic arguments:

1) That there is no evidence, or insufficient evidence, of the delivery of the valve to or their acceptance by the appellant (Appellant's Points of Error 5, 6, and 12).

2) That there is no evidence, or insufficient evidence, that the appellant agreed to purchase the valve; particularly, that there is no evidence, or insufficient evidence, to support the trial court's finding that Luna had the apparent authority to agree to buy the valve (Appellant's Points of Error 1–4 and 7–11).

In considering an allegation that there is no evidence supporting the trial court's finding, this court must consider only the evidence favoring those findings. In reviewing a contention that there is insufficient evidence to support the trial court's finding, the court must review the entire record. *In re Kings' Estate*, 244 S.W.2d 660 (Tex.1951), *Padgett v. Sequin*, 636 S.W.2d 553 (Tex.Civ.App.—San Antonio 1982, no writ).

### 1) The "No Evidence" Test

Viewing only that evidence supporting the trial court's finding, we conclude:

a) That the appellee received a telephone call requesting the appellee to locate the type of valve described in the statement of the case.

b) That the appellee made inquiries to locate and acquire such a valve.

c) That another company, Universal Alloys, had such a valve and agreed to sell it to the appellee.

d) That the appellee purchased and received that valve from Universal Alloys.

e) That the appellee sent the valve to the appellant via a common carrier.

We must determine whether there is any evidence to support the trial court's finding that the common carrier actually delivered the valve to the appellant. The appellee offered at trial its Plaintiff's Exhibit No. 3, a receipt from the common carrier, Arrow Delivery Service. This receipt lists the cargo that the common carrier received as a valve, and it lists the appellee as the shipper and the appellant as the receiver. A "G. Clark" signed the receipt as the driver, and there is an illegible but visible mark that could represent a signature in the "received in good order by consignee" block. The appellant objected at trial to the admission of this exhibit, arguing that since Bradshaw never saw the driver sign the slip, there was insufficient testimony that the driver's signature was genuine, and therefore insufficient authority that the common carrier actually received the valve. This is the thrust of the appellant's Point of Error Number 12.

■ The trial court properly admitted the introduction of Plaintiff's Exhibit No. 3. The testimony demonstrates that, while the appellee's president may not actually have seen the driver sign the receipt, the overall sequence of events surrounding the tender of the valve to Arrow Delivery Service and the placement of this receipt in the appellee's files indicates a sufficient chain of continuity as to satisfy the basic authenticity requirement. As such, the receipt falls within the "records of regularly conducted activity" exception to the hearsay rule. Tex.Rev.Civ.Stat.Ann. art. 3713 (Vernon 1976).

■ Therefore, there is sufficient testimony and documentary evidence to conclude that *some* evidence exists to support the trial court's finding that the appellee delivered the valve to the appellant. We overrule the appellant's Point of Error Number 5, which alleges that there is *no* evidence to support the trial court's finding that the valve was delivered to and accepted by the appellant.

### 2) *The "Some Evidence" Tests*

We now review the record in its entirety, in order to determine whether there is *sufficient* evidence overall to support the trial court's finding as to the delivery of the valve.

The foregoing indicates that there is some, although admittedly very slight, evidence that the appellee delivered the valve to the appellant. However, there is considerable evidence, taken as a whole, which indicates that the appellant did not receive the valve from the appellee, and even that the appellee *never sent* the valve.

First, there is the uncontroverted testimony of the appellant's president that the purchase order number on the appellee exhibits is incorrect; the exhibits list the purchase order number as "L–8845," while the uncontroverted testimony of the appellant's president indicates that the appellant has never used letters in its purchase order numbers. The appellant's president testified unequivocally that the appellant uses only numbers on its purchase orders.

Second, there is the uncontroverted testimony of the appellant's president as to the extensive documentation system the appellant uses for regulating: (1) the purchase of valves from outside suppliers; (2) the receipt of those valves from the suppliers; and (3) the sales and shipment of those valves to the appellant's customers. This witness further testified that this documentation is both a check on its own inventory and a regulation of its purchasing and sales activities.

Third, there is the uncontroverted testimony by this witness that he personally searched the appellant's records and found none of this documentation in its files.

Fourth, there is the witness' uncontroverted testimony that if any step of this process is missing documentation, the entire process stops until the appellant locates or accounts for that documentation.

Fifth, there is this witness's uncontroverted testimony that the appellee could not have spoken to a woman in the appellant's accounting department because at the time of this transaction no woman worked in this department. Indeed, the appellant's president testified that the only woman who worked for the appellant was a switchboard operator/receptionist.

Sixth, there is the delivery receipt from Arrow Delivery Service itself. As noted above, no copy of this receipt was present in the appellant's records. Moreover, it is arguable that the illegible signature in the "received" block not only may not be the signature of any individual working for the appellant, but may not be a signature at all (i.e., it may be a carbon effect of something written on another sheet of paper placed on top of the slip).

■ Much of this evidence is in the form of materials not present, as opposed to materials present for inspection by the trial court or this court. However, taken as a whole, the record reflects that the appellant never received the valve, or possibly even that the appellee never shipped it to the appellant.

Assuming that the appellee shipped the valve but that the appellant never received it, this court must consider when the responsibility for the loss shifted from the appellee to the appellant; that is, whether this agreement was a "shipment" or "delivery" agreement.

■ If this agreement was a "shipment" agreement, then the responsibility for the loss shifted to the appellant when the appellee tendered the valve to the common carrier. Tex.Bus. & Com.Code Ann. 2.509(a)(2) (Vernon 1968); *Caudle v. Sherrard Motor Co.*, 525 S.W.2d 238 (Tex.Civ. App.—Dallas 1975, writ ref'd. n.r.e.). If, on the other hand, this agreement was a "delivery" agreement, then that responsibility for loss shifted to the appellant only when the appellant actually received the valve from the common carrier. The absence of any testimony as to the nature of this transaction compounds the problem. We determine the parties' intentions from Plaintiff's Exhibit No. 1 (the appellee's sales order on the valve) and Plaintiff's Exhibit No. 3 (the receipt from the common carrier).

The appellee's sales order contains an F.O.B. (Free On Board) block. This block states neither the appellant's nor the appellee's names or addresses, but rather the single word "delivered." Moreover, there is Plaintiff's Exhibit No. 3, the receipt from the common carrier. This receipt contains a block marked "bill to:" and that block contains the notation "B.J. Valve".

■ The effect of an "F.O.B." statement depends on the context in which the parties use it. *Olympia Towel Supply Co. v. Prade*, 22 S.W.2d 680, 681 (Tex.Civ.App. —Texarkana 1929, no writ); see, e.g., *Tyson v. Seaport Grain, Inc.*, 388 S.W.2d 731 (Tex.Civ.App.—1965, writ dism'd.), *E.E. Cloer General Contractor v. Timber Structures, Inc.*, 270 S.W.2d 693 (Tex.Civ. App.—1954, writ ref'd n.r.e.). Moreover, a contract that shifts the risk of loss to the buyer before the buyer receives the merchandise is so unusual that a seller who desires to achieve this result must communicate that desire clearly to the buyer.

*Caudle v. Sherrard Motor Company*, 525 S.W.2d 238, 240 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.). The record indicates appellee's willingness to make immediate shipping arrangements. The shipping invoice clearly authorizes the common carrier to bill appellee for the delivery, while nothing in the record indicates either an agreement between the appellant and the appellee that the appellant would later pay the shipping costs, or an expectation of this by the appellee. Finally, the record indicates great concern by the appellee whether the common carrier had delivered the valve to appellant.

■ Thus, the circumstances of this transaction demonstrates that the appellee at least contemplated it to be a "delivery" agreement, and therefore the responsibility for the loss of the valve, assuming the appellee did in fact deliver it to Arrow Delivery Service, remained with the appellee until the appellant received the valve. We hold that there is insufficient evidence to support a finding that the appellant actually received the valve, and since the delivery of the valve was a condition precedent to the appellant's obligation to pay for that valve, the appellee's claim for the $7,500 is without merit because of failure of consideration.

We overrule the appellant's Point of Error 12 and sustain its Point of Error 6, in which it is argued that there is *insufficient* evidence to support the trial court's finding that the valve was delivered to and accepted by the appellant.

■ In considering the sufficiency of the evidence supporting the trial court's finding that Luna had the *apparent authority* to agree to purchase and acknowledge receipt of the valve (Points of Error No. 1-4, and 7-11), we examine the appellee's reliance on the doctrine of apparent authority. The general rule of principal-agent relations is that the agent's unauthorized actions do not bind the principal unless (1) the principal ratifies those actions, or (2) something estops the principal

from denying the authority of those actions:

[A] principal will not be charged with liability to a third person for the acts of the agent whenever the agent's acts are in excess of authority, except where such acts are subsequently ratified by the principal or when the principal is estopped to deny his liability therefore.

*Longoria v. Atlantic Gulf Enterprises, Inc.,* 572 S.W.2d 71, 77 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd. n.r.e.). See also *Gessell v. Traweek,* 628 S.W.2d 479, 482 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.). This doctrine of apparent authority arises from the second of the categories in the general rule. The principal, having given the agent the appearance of authority to do a certain act, and having knowingly allowed the agent to perform that unauthorized act, cannot subsequently avoid liability for the agent's acts by alleging that the agent lacked authority to do them. *Rourke v. Garza,* 530 S.W.2d 794, 803 (Tex.1975).

■ Certain limitations apply in determining whether apparent authority exists. First, apparent authority is determined by looking to the acts of the principal, whether those acts would lead a reasonably prudent person using diligence and discretion to suppose that the agent had the authority the agent purported to exercise. *Biggs v. United States Fire Insurance Co.,* 611 S.W.2d 624, 629 (Tex.1981), *Douglass v. Panama, Inc.,* 504 S.W.2d 776, 778–779 (Tex.1974).

■ Second, only the acts of the principal may be considered; representations made by the agent of his authority have no effect. *Southwest Title Insurance Co. v. Northland Building Corp.,* 552 S.W.2d 425, 428 (Tex.1977), *Custom Leasing, Inc. v. Texas Bank and Trust Company of Dallas,* 516 S.W.2d 138, 144 (Tex.1974).

■ Third, the principal must either have affirmatively held the agent out as possessing the authority or the principal must have knowingly and voluntarily permitted the agent to act in an unauthorized manner. *Douglass v. Panama, Inc.,* 506 S.W.2d at 778–779 (Tex.1974), *Bolin v. Pacific Finance Corp.,* 278 S.W.2d 879, 884 (Tex.Civ.App.—Amarillo 1954, no writ).

■ Fourth, there are two types of authority an agent may possess: general authority and special authority.

·A general agent is one empowered to transact all the business of his principal of a particular kind or in a particular place, and such general agent has the apparent authority to do anything that the company could do in the premises ... A special agent has authority only to do those things entrusted to him and such as are apparently necessary to accomplish that agent.

*Great American Casualty Co. v. Eichelberger,* 37 S.W.2d 1050, 1052 (Tex.Civ.App.—Waco 1931, writ ref'd).

■ Moreover, a party dealing with an agent must ascertain both the fact and the scope of the agent's authority, and, if the party deals with the agent without having done so, he deals with the agent at his own risk. There is no apparent authority where the party dealing with the agent has notice of a lack of or limitation on the agent's authority. *F.M. Stigler, Inc. v. H.N.C. Realty Co.,* 595 S.W.2d 158, 162–163 (Tex.Civ.App.—Dallas 1980), *rev'd. on other grounds Land Title Company of Dallas, Inc. v. F.M. Stigler, Inc.,* 609 S.W.2d 754 (Tex.1980); *Boucher v. City Paint Symbol and Supply, Inc.,* 398 S.W.2d 352, 356 (Tex.Civ.App.—Tyler 1966, no writ).

■ When a buyer deals with an agent who is a salesman, this requirement of ascertaining the salesman's authority is particularly strict:

[Where the buyer is dealing with a salesman], as a matter of law [this puts] him on notice that such authority was only special, whereupon it became its duty to ascertain the nature and extent of it, if any.

*Smith v. American Radiator & Standard Sanitary Corp.,* 166 S.W.2d 757, 759 (Tex. Civ.App.—Galveston 1942, no writ).

In determining the nature and extent of the agent's authority, the party dealing with the agent may base his conclusion partly on the usual practices in that business or industry; however, the "usual" practice is not necessarily the same as the "frequent" practice that that party may have experienced in dealing with the agent. *Campbell Paint & Varnish Co. v. Ladd Furniture and Carpet Co.*, 83 S.W.2d 1095, 1096 (Tex.Civ.App.—Fort Worth 1935, writ dism'd).

Thus, any examination of the appellant's point of error alleging insufficient evidence as to Luna's apparent authority to purchase the valve for the appellant requires consideration of two basic factors: whether the appellant acted in such a manner as to "clothe the agent with the indicia of authority," *Zenith Uniform Rental Corp. v. Preston Road Dodge, Inc.*, 435 S.W.2d 305 (Tex.Civ.App.—Waco 1968, no writ), and whether the appellee acted with diligence and discretion in determining the nature and extent of Luna's authority.

The appellant, in its Point of Error No. 9, claims that all evidence of Luna's apparent authority was without support in the pleadings. The appellant argues that in order to prove apparent authority, the appellee needed specifically to plead apparent authority; that the appellant specially excepted to the appellee's pleadings, which did not reflect this pleading; and that, therefore, the trial court erred in allowing the introduction of any and all evidence leading to the conclusion of Luna's apparent authority to act for the appellant. Therefore, no evidence exists to support any finding of Luna's apparent authority to act for the appellant.

We agree that a plaintiff must specifically plead apparent authority. However, if a party fails to plead apparent authority, it is incumbent upon the opponent to make a special exception to that defect. Failure to make a special exception waives that defect for judicial review, and thus the plaintiff may recover under any type of authority. *Southline Equipment Co. v. National Marine Service, Inc.*, 598 S.W.2d 340, 342 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ), *National Life & Accident Insurance Co. v. Ringo*, 137 S.W.2d 828, 830 (Tex.Civ.App.—Dallas 1940, writ ref'd). It is also correct that, if the party does not call special exceptions to the trial court's attention, and the record does not show the trial court acted on them, the party waives those defects. Tex. R.Civ.P. 90; *Kilpatrick v. State Board of Registration for Professional Engineers*, 610 S.W.2d 867, 871 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.); *Rio Grande Valley Sugar Growers, Inc. v. Campesi*, 580 S.W.2d 850, 862 (Tex.Civ.App.—Corpus Christi 1979), *rev'd on other grounds*, 592 S.W.2d 340 (Tex.1980).

The record does not indicate that the appellant called its special exceptions to the trial court's attention nor that the trial court took any action on those special exceptions. The appellant has waived any defects in the appellee's pleadings. We overrule the appellant's Point of Error No. 9.

The appellant argues in its Points of Error Nos. 10 and 11 that all testimony by the appellee's president of any statements by Luna was inadmissible hearsay, and not statements by the agent of a party-opponent because Luna did not make those statements "within the scope of his agency or employment." Tex.R.Evid. 801(e)(2)(D). The appellant urges that since those statements were inadmissible hearsay, there is no evidence that the appellant agreed to purchase the valve or that he received it, and we must sustain the appellant's Points of Error Nos. 1, 3, 7, 10, and 11.

This argument is without merit. There is the uncontradicted testimony of the appellant's president that although the appellant's salespeople had the authority to search for outside suppliers of valves, they did not have the authority to finalize a purchase. Since Luna, as a salesperson for the appellant, had the authority to call the appellee and inquire about the availability of a valve, any statements made by Luna during his initial call soliciting the availabil-

ity of valves occurred not only with apparent but actual authority. Thus his initial conversation with the appellee was not hearsay.

■ Similarly, Luna's statement to the appellee to "ship the valve at once," was also not hearsay. Uncontradicted trial testimony indicates that these types of conversations constitute common business practice in the petrochemical valve industry. Since much of this kind of business transpires over the telephone, without such statements it would be difficult to form agreements or conduct business. As such, Luna's statement becomes a verbal act rather than hearsay.

■ The appellant also alleges that the appellee's call to Luna, wherein Luna acknowledged that the valve had arrived, was also hearsay. The uncontradicted trial testimony indicates that not only did Luna have authority to search for valves when the appellant's inventory did not contain them, but also that his direct job responsibility as a salesperson was to locate the customers to whom the appellant could sell valves. These two facts, when taken together, indicate that within the normal course of the exercise of Luna's actual authority he would have reason to know if an item which he was attempting to sell to another customer had arrived and was available at the appellant's site. This "authority to acknowledge" is a limited form of authority. It is not so much authority on the part of Luna to acknowledge the fulfillment of the condition precedent to payment for the valve, as it is authority to acknowledge his ability to continue his function as a sales officer of the appellant. Nevertheless, this limited authority to acknowledge is adequate to place his statement within the non-hearsay category. Tex.Rev.Civ.Stat.Ann. art. 3713 (Vernon 1976).

The trial court properly admitted testimony of Luna's acknowledgment, and we therefore overrule the appellant's Points of Error 10 and 11.

The record indicates the following favorable evidence of Luna's apparent authority to agree to purchase the valve and to acknowledge its receipt:

(a) Luna, having the authority to call outside suppliers and solicit the availability of certain valves, had the authority to contact the appellee on the appellant's behalf.

(b) Once the appellee informed Luna that the valve was available, Luna informed the appellee on the appellant's behalf that appellee should ship the valve immediately.

(c) The appellee later contacted Luna in an effort to find out if the valve had arrived at the appellant's site. Luna, acting within his authority as a salesperson, would have had reason to know if a valve he had solicited in order to provide for another customer had arrived. Thus, Luna not only had the apparent authority to request that the appellee send the valve but also the apparent authority to acknowledge its delivery.

■ We hold that *some* evidence exists to support the trial court's determinations as to Luna's apparent authority. Therefore, we overrule the appellant's Point of Error Nos. 1, 3, and 7.

We now consider the entire record to determine whether the appellant, as principal, acted in such a way as to clothe its agent, Luna, with the "indicia of authority" so as to ratify Luna's otherwise unauthorized activities, and whether the appellee failed to exercise diligence and discretion in determining the fact and scope of Luna's authority.

The only evidence supporting Luna's apparent authority to agree to purchase and to acknowledge receipt of the valve is, first, the fact that the appellant's salespeople had the authority to solicit valves from outside suppliers, and, second, the common business practice of negotiating these agreements over the telephone. Arrayed against the evidence, however, are strong indications that the appellant did not demonstrate a knowing and voluntary acquiescence in its agent's activities, and that the appellee did in fact fail to exercise the

proper degree of diligence and discretion in determining precisely what was the scope of Luna's authority was.

Appellant's president's uncontroverted testimony is that appellant's salespeople had the limited authority only to search for valves from outside suppliers. This authority did not extend to agreeing to a sales offer, authorizing delivery, or acknowledging receipt. The appellant's salespeople had to have the appellant's purchasing department's permission to agree to a purchase price, and the authority to purchase a valve lay exclusively with the purchasing department.

While the foregoing goes immediately to establishing a lack of *actual* authority, it also applies to establishing a lack of *apparent* authority when the uncontradicted testimony indicates that this exclusive policy restricting the salespeople "search" activities was a matter which the appellant reviewed with its employees every six months. Moreover, the appellant's testimony demonstrates that it was not the practice of the appellant, even though its own purchasing department, to use a company such as the appellee's company as a middleman when searching for valves. The appellee was the type of company with which the appellant would deal directly for acquisition and shipment of valves but not the type of company that the appellant would have used to locate a valve from a third company.

These facts demonstrate unequivocally that the appellant did not, through its actions: (1) clothe its agent with the "indicia of authority;" or (2) fail to supervise its employees or exhibit a knowing and voluntary acquiescence of its salespeople unauthorized activities.

The record reflects that the appellee failed to exercise reasonable diligence and discretion in determining the nature and scope of the appellant's salesperson authority. Bradshaw, the president of the appellee, having dealt with Luna over the telephone, knew and understood what position Luna occupied for the appellant. The appellee failed to determine whether Luna had the authority to agree to purchase a valve and, if so, what restrictions and limitations were upon him in such negotiation.

■ The evidence taken as a whole does not support the trial court's determination that Luna had the apparent authority to agree to purchase and acknowledge receipt of the valve. Rather, it shows that he had only a limited authority in the solicitation of valves, that the appellant made consistent and diligent efforts to prevent its employees from abusing that authority, and that the appellee relied only upon Luna as to representations or inferences as to his authority.

We overrule the appellant's Points of Error 1, 3, 5, 7, 9, 10, 11, and 12. We sustain the appellant's Points of Error Nos. 2, 4, 6, and 8, which deal with the insufficiency of the evidence as to agreement to purchase, apparent authority to purchase, delivery and acceptance, and authority to acknowledge receipt of the valve.

We reverse the judgment of the trial court and render judgment for appellant. For Publication. TEX.R.CIV.P. 452