Gerald McKENZIE, Appellant,

v.

Mark OLMSTEAD, d/b/a World Cargo and Tailwind Trailers, Respondent.

No. C3–98–1310.

Court of Appeals of Minnesota.

Jan. 26, 1999.

**864**

James I. Roberts, St. Cloud, MN (for appellant).

John H. Scherer, Rajkowski Hansmeier Ltd., St. Cloud, MN (for respondent).

Considered and decided by DAVIES, Presiding Judge, KLAPHAKE, Judge, and AMUNDSON, Judge.

## O P I N I O N

KLAPHAKE, Judge.

Appellant Gerald McKenzie sued respondent Mark Olmstead, d/b/a World Cargo (Olmstead),[1] to recover $3,620, the sum McKenzie had paid to Olmstead for a custom-made trailer that was stolen before McKenzie took physical possession of it. Following trial, the court determined that the risk of loss had passed to McKenzie by "contrary agreement" of the parties under Minn.Stat. § 336.2–509(4) (1996) because McKenzie had instructed Olmstead to park the trailer outside a fenced area and secure the trailer with a chain, so that McKenzie could pick it up after hours. We affirm.

## FACTS

Olmstead is a merchant in the business of selling trailers and operates a sole proprietorship known as World Cargo. His principal place of business is in St. Croix Falls, Wisconsin. During the winter of 1996–97, he also sold trailers from a site in Elk River, Minnesota.

Olmstead testified that McKenzie called him toward the end of January 1997, ordered a custom-made trailer, and mailed him a check. The trailer was manufactured and shipped to the Elk River site three weeks later as part of a larger shipment. Olmstead transported the other trailers in the shipment to his St. Croix Falls office, but left McKenzie's trailer at the Elk River site because the parties had agreed that McKenzie would pick the trailer up there. The trailer was kept within a locked, fenced area at the site.

Olmstead testified that the trailer was left at the Elk River site for more than a month and that he attempted to reach McKenzie a number of times to let him know that the trailer was ready. When McKenzie finally returned Olmstead's call, Olmstead told McKenzie that the trailer could be picked up any Tuesday or Thursday before 6:00 p.m.

Olmstead testified that McKenzie suggested the trailer be left outside the fence, but that Olmstead indicated to McKenzie several times that he preferred not to leave the trailer outside the fence because it was an unsecured area. Olmstead further testified that McKenzie suggested using a coupler lock, but that Olmstead had to explain that such a lock could not be placed on this particular type of trailer and that he could only chain the tires. Olmstead testified that he was acting at McKenzie's direction when he chained the trailer and left it outside the fenced area on Thursday, April 3, 1997.

McKenzie's version of the parties' conversation differed slightly from Olmstead's. McKenzie testified that Olmstead was the one who suggested that the trailer be left outside the fenced area and that when McKenzie raised the possibility of the trailer being stolen, Olmstead explained that he would secure the trailer with a "ball coupler lock" and chain. At trial, McKenzie described this type of lock as a theft-proof device that would destroy the hitch if anyone tried to remove it without a key.

When McKenzie arrived to pick up the trailer on Sunday, April 6, it was gone. McKenzie testified that when he contacted

---

1. McKenzie also sued Tailwind Trailers, the manufacturer of the trailer. At the beginning of trial, however, the parties agreed to dismiss Tailwind Trailers, so it was not a party to this action.

Olmstead the next day, Olmstead told him the trailer must have been stolen and that McKenzie should contact the police.

## ISSUE

Do the trial court's findings support its conclusion that the parties had a "contrary agreement" that shifted the risk of loss to McKenzie under Minn.Stat. § 336.2–509(4) (1996)?

## ANALYSIS

The parties agree that the issue presented at trial was governed by Minn.Stat. § 336.2–509 (1996), which allocates the risk of loss between a buyer and seller. The parties further agree that this case does not involve a shipment contract or a bailee situation, which are described in subsections (1) and (2) of the statute. Rather, the dispute here arises over subsections (3) and (4), which provide:

(3) In any case not within subsection (1) or (2), the risk of loss passes to the buyer on receipt of the goods if the seller is a merchant; otherwise the risk passes to the buyer on tender of delivery.

(4) The provisions of this section are subject to contrary agreement of the parties * * *.

Minn.Stat. § 336.2–509.

Under subsection (3), the risk of loss does not pass from a merchant to a buyer until the buyer's "receipt," which is defined as "taking physical possession." Minn.Stat. § 336.2–103(c). Olmstead is undisputedly a "merchant," as defined by Minn.Stat. § 336.2–104(1). McKenzie thus argues that because he never took physical possession of the trailer, the risk of loss never shifted to him and remained on Olmstead under subsection (3).

■ However, under subsection (4), the parties may modify the allocation of loss by "contrary agreement." "Agreement" is defined in the UCC as

the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this chapter (sections 336.1–205 and 336.2–208).

Minn.Stat. § 336.1–201(3). Thus, a contrary agreement need not be express or written and may be implied from the parties' conduct or the circumstances of the case.

■ The implications of any contrary agreement regarding allocation of the risk of loss, however, should be explicit and understood by both parties. *See, e.g., Taylor & Martin, Inc. v. Hiland Dairy, Inc.,* 676 S.W.2d 859, 870–71 (Mo.App.1984) (agreement to shift risk of loss to buyer before he receives goods is "so unusual" that it must be set forth in clear and unequivocal language) (citing *Caudle v. Sherrard Motor Co.,* 525 S.W.2d 238, 241 (Tex.Civ.App.1975)). Requiring any "contrary agreement" to be clear and unequivocal is consistent with the underlying theory of section 336.2–509, which generally places the risk of loss on the party most likely to insure against it and most likely to take precautions to protect against loss. 21A *Minnesota Statutes Annot.* § 336.2–509 off. cmt., at 491 (1966), *see also Hayward v. Postma,* 31 Mich.App. 720, 188 N.W.2d 31, 33 (Mich.App.1971) (quoting this language).

■ In this case, the trial court found that due to McKenzie's work schedule, he instructed Olmstead "to park the trailer outside the fenced area * * * and to secure the trailer with a chain and lock around the tires, so [McKenzie] could pick it up after business hours." In its attached memorandum, the trial court further found that the parties expressly discussed the risk of leaving the trailer outside the fenced area, but that McKenzie assumed that risk by insisting that Olmstead comply with his directives.

The trial court was entitled to believe Olmstead and disbelieve McKenzie regarding the parties' conversation. *See* Minn. R. Civ. P. 52.01 (trial court's findings of fact may not be reversed unless clearly erroneous, with due regard given to the court's opportunity to judge credibility of witnesses). The trial court's findings are supported by the evidence, which consists mainly of Olmstead's testimony to the effect that McKenzie directed or instructed him to place the trailer outside the fenced area and that Olmstead questioned the wisdom of such a move, but that McKenzie insisted. This evidence is sufficient to support the trial court's conclusion that a contrary agreement existed that

shifted the burden of risk of loss to McKenzie once Olmstead complied with that agreement by moving the trailer outside an area over which he had control. *See Tonka Tours, Inc. v. Chadima*, 372 N.W.2d 723, 728 (Minn.1985) (on review of judgment where no posttrial motions have been made, we determine whether evidence sustains findings of fact and whether those findings sustain conclusions of law and judgment).

## D E C I S I O N

The trial court's findings are not clearly erroneous and support its conclusion that the parties shifted the risk of loss to McKenzie by contrary agreement.