ROWSON v. FULLER et al.

No. 14175.

Court of Civil Appeals of Texas. Dallas.

April 14, 1950.

Rehearing Denied May 12, 1950.

Frank & Frank, Dallas, for appellant.

Marion S. Church and W. F. Bane, Dallas, for appellees.

BOND, Chief Justice.

Appellant Dr. A. F. Rowson, as plaintiff, instituted this suit against appellees W. W. Fuller, W. W. Fuller, Jr., and Winifred B. Scott (doing business as partners under the name of Asbestos and Roofing Company), as defendants, for breach of contract for the roofing of an apartment building owned by appellant, resulting in damage to the roof and interior of the building.

The contract, dated May 13, 1947, is .in form of a letter addressed to R. H. Turner in which the company proposed a special kind and character of roofing materials of their own design to be used and the employment of "experienced mechanics" to put the roof on for the sum of $426; and upon completion of the work, furnish a ten-year "maintenance guarantee." Mr. Turner accepted appellees' proposal. Thus, in a manner, the company put on the roof and when completed issued their policy or contract guaranteeing to repair any leaks in the roof which may develop within ten years from May 27, 1947 "by reason of improper application, or manufacture" of materials, upon written notice by the owner of such leaks; and expressly limited their guarantee by "waiver of any claim based on damage to, or defect in, roofing caused by warped sheathing boards, cracking or displacement of concrete, gypsum, insulation, or other roof base; damage to building or contents therein, flashings, Acts of Providence, or any damage or defects other than those specifically referred to above."

Appellant in pleadings made, as a basis of his suit, the original contract of May 13, 1947, entered into by appellees with his agent, Turner, and vouched in the aforesaid guaranty policy of May 27, 1947, as an element in the suit, and in detail related the damages which he sustained due to

faulty installation of the roof and the materials used. The defendants answered merely by general denial.

The trial was to a jury on special issues. The jury findings, in effect, were: (1) That R. H. Turner in signing the contract of May 13, 1947, was acting as the agent of plaintiff; (2) that defendants put on the roof in an unworkmanlike manner; (3) that the roof leaked; (4) that such leakage was caused by the unworkmanlike manner in which the roof was put on by the defendants; (5) that $200 would be the reasonable cost of repairing the roof; (6) that the ceilings and inside walls of the building in question were, after the roof had been put on by the defendants, water-damaged; (7) that the unworkmanlike manner in which the defendants put the roof on caused the water-damage to the ceilings and walls of the building; (8) that $1,000 is the reasonable and necessary cost of repairing the inside water-damage; (9) that no other defect in the roof caused the water-damage; (10) that none of the damage to the building was caused by failure or refusal of plaintiff to put copings on the outside wall of the building; and (11) that none of the damage was the result of failure or refusal of plaintiff to properly install ventilators on the roof of the building. After the return of the verdict and before judgment was entered, both plaintiff and the defendants timely moved for judgment. The court overruled plaintiff's motion; sustained that of defendants; accordingly entered judgment non obstante veredicto; in effect, that plaintiff recover nothing against defendants; and that defendants go hence without day and recover their costs. Plaintiff excepted to the action of the court, perfected his appeal, and urges error in the trial court's overruling his motion for judgment and in granting that of the defendants against the verdict of the jury.

The appellant based his cause of action, and urges it here, on implied covenants arising from the original contract made by appellees with his agent Turner, wherein the defendants guaranteed the materials used and workmanship in putting on the roof according to appellees' special plan and specifications, the employment of "experienced mechanics," and the "maintenance guarantee" for a ten-year period from completion of the roof; by which the defendants impliedly agreed to do the work in a workmanlike manner as to prevent the roof from leaking, and, in default, assumed liability for any damage plaintiff shall sustain from the roof construction. It is a rule of law that the representation of a fact which induces one to act is a warranty; thus imposes an implied obligation upon the one making such representation to stand good for that which the facts would reasonably imply,—not by virtue of agreement to assume it, but applies irrespective of an agreement. "A contract implied in fact arises where the acts of the parties are such as to indicate, according to the ordinary course of dealings and the common understanding of men, a mutual intent to contract. Here the intention of the parties is not expressed in language; their assent and the terms of the agreement are inferred as a fact from, and proven by, the facts and circumstances of the transaction." 10 Tex.Jur., p. 19, sec. 8. As stated in City of Huntsville v. McKay, Tex.Civ.App., 286 S.W. 305, 307, " * * * One under contract to do work under particular plans and specifications, as the appellant McLendon was, is bound to execute it in a good and workmanlike manner; and, if from result of bad workmanship the work is utterly defective, or not in compliance with the plans and specifications, he is entitled to nothing, but is liable for any damages his lack of skill and faithfulness may have caused. * * * "

The findings of the jury have ample support in evidence that the roof was not put on in a workmanlike manner, that the roof leaked, that the plaintiff (owner) suffered damages to the amount of $1,200 as the direct result of the leaky roof put on by defendants, and not as the result of any other cause. While the contract makes no express warranty, or guaranty, that the roof would not leak, or that the contracting parties would not be liable for

damages as a result of unworkmanlike manner in the construction of the roof, or resulting from the materials used; yet, such contract having proposed the materials, plans, and specifications, and that the work would be done by "experienced mechanics," with maintenance guaranty for 10 years, the contract necessarily implied liability for failure of the roof construction, resulting in leaks and damage. The evidence is not controverted that the roof leaked and that plaintiff suffered the damages as found by the jury; hence the defendants impliedly warranted the roof to do that which would reasonably be expected of a roof,—that it would not leak and cause damage.

█ The defendants contend that the original contract in question was between them and R. H. Turner and that all obligations in contract or such as may be implied thereby were personal to Turner; and if there is an implied obligation supported by the written contract covenants, such in no way concerns the plaintiff; hence plaintiff cannot base his claim on any alleged breach thereof. Then, too, defendants, upon completion of the work, having furnished a ten-year maintenance policy with limitation provisions contrary to the implications·urged by plaintiff as to workmanship and materials, and the plaintiff having attached such policy to his petition as an exhibit, introduced in evidence, he thereby accepted the policy, thus waived all damages to, or defects in, the roof construction, in accordance with said policy; hence plaintiff cannot be heard ·to say that the guaranty policy was not accepted and not binding on him. Manifestly, if Turner was not the agent of plaintiff and not acting for plaintiff in accepting the contract of May 13, 1947, then the plaintiff would have no cause of action based on the contract; and, too, there being a written guaranty policy, or contract, of May 27, 1947 covenanting express limitations, such, if accepted by plaintiff, would be binding on him and he could not claim any implied guaranty outside the express terms of the policy. The written stipulations in the policy would, if accepted, be the exclusive measure of all rights of the parties, and controlling as against parol evidence or any implication arising contrary or in addition thereto. In J. I. Case Threshing Machine Co. v. Hall, 32 Tex.Civ.App. 214, 73 S.W. 835, 837, Court of Civil Appeals held: "Where parties have expressly agreed upon a warranty, the law must, in the absence of fraud or mistake, conclusively presume that they have included in their express agreement whatever of warranty is to prevail between them respecting the matter to which it refers." (Citing authorities.) ·

█ We are not in accord with the factual background urged in support of defendants' contentions. Mr. Turner was the agent of plaintiff; thus the express and implied covenants of the contract with Turner were, in fact, with the plaintiff,—his principal. And the pleadings of plaintiff with attached subsequent guaranty policy or contract limiting defendants' liability to repairs of roof-leaks and excluding resulting damages, and the offering of same in evidence, as reflected by bill of exception approved by the trial court, was not a complete acceptance of the policy. The bill of exception, material here, reads: "That before the retirement of the jury in the above cause to consider their verdict, the court called the attorneys for plaintiff and defendant to the bench, out of the hearing of the jury, and stated that in the opinion of the court, plaintiff's attorney had abandoned all cause of action upon the written guarantee, dated May 27, 1947, which was introduced as evidence by plaintiff as his Exhibit No. 1; by plaintiff's attorney having stated in his argument to the jury that the plaintiff's claim did not rest on the said guarantee but on the original contract of May 13, 1947, plaintiff's Exhibit No. 15. At which time defendant's attorney agreed with the court, but plaintiff's attorney stated that in his opinion the case did rest on the original contract but that in what he had said he had not waived any rights, if any, under the said guarantee. At which time the court made a written memorandum and handed it to defendant's attorney. Plaintiff tenders this statement to correctly preserve said proceedings, they not otherwise appearing of

record in this court, and requests the court to approve the safe for record in this cause." "An offer or proposal by one party does not constitute a contract until it is accepted by the other party, according to its terms; and ordinarily, until so accepted, it may be withdrawn." 10 Tex. Jur., p. 35, sec. 17. It thus appears that the plaintiff, having abandoned his alleged cause of action based on the written guaranty of May 27, 1947 which was attached to his pleadings and offered in evidence, and his attorney having stated to the jury that plaintiff's claim did not rest on said guaranty but on the original contract of May 13, 1947, waived no right perforce of the subsequent guaranty. Such contractual limitations were not accepted as waiver or estoppel between the parties, especially so, in absence of pleadings by the defendants presenting the issue of waiver or estoppel by contract.

As we view this record, the plaintiff was entitled to judgment on the findings of the jury; hence it becomes our duty to render such judgment as the trial court should have rendered; accordingly, the judgment of the trial court is reversed and judgment here rendered in favor of appellant, plaintiff in the court below, against appellees, defendants in the court below, jointly and severally, d/b/a Asbestos and Roofing Company, for the sum of $1,200 with 6% interest from June 20, 1949 (date when judgment should have been rendered) until paid, and all costs of suit.

Reversed and rendered.

### On Motion for Rehearing.

Appellees in motion for rehearing earnestly insist that the finding of the jury that R. H. Turner, in signing the contract of May 13, 1947, was the "agent" of appellant, has no support in evidence; and they say "appellees are unable to understand from the foregoing facts how this court can hold, even though there was a jury finding to that effect, that R. H. Turner was an agent of appellant in entering into the contract, dated May 13, 1947." In support of such declaration appellees quote the testimony of appellant wherein he testified that R. H. Turner was his "general contractor" and that the contract was made by Turner; and the testimony of appellee W. W. Fuller that he made the contract with R. H. Turner, as such contractor, and that the only contract that was made with appellant was the guarantee policy of May 17, 1946 which was an incident to and a part of the contract he had theretofore made with Turner. Manifestly, if the testimony, as related in appellees' motion, that the contract of May 13 was in fact made with Turner individually, it is difficult to understand why appellees executed the guarantee policy of May 17 to and in name of the appellant. It so happens in this case, in the light of further disclosure in evidence, that the testimony related by appellees is not alone conclusive to establish agency of Turner. "General contractor" is a relative term, general in nature. Webster defines "contractor" as one who contracts to do anything. In Standard Dictionary it is said that a "contractor" is one who executes plans under contract. By the Century Dictionary, that a contractor is one who contracts to furnish supplies or to construct work or erect buildings or perform any work, or service, at a certain price or rate. "Agent" is broad in its signification, and may mean a "general agent," or one with special or limited authority, or a "general or special contractor" as distinguished from an "independent contractor." Thus it will be seen, without extended analysis of the various lexical definitions that the significant element in the relation of an employee or agent to his employer, specifically considered, is personal service, while the significant element in the relation between a contractor and his principal is the work, as an entirety, to be performed by him. 9 Words and Phrases, Perm. Ed., Contractor, p. 325 et seq. In Winerich Motor Sales Co. v. Ochoa, Tex. Civ. App., 58 S.W.2d 193, the court gives the term "contractor" as meaning "any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its

360

details. The true test of a contractor would seem to be that he renders service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished."

■ In the light of this record we are of the opinion that the jury finding that Turner was the agent or employee of appellant Rowson is fully supported by the testimony. Appellant testified that he began construction of the building in question sometime in January 1947, that he secured no bids for the construction, but entered into a contract with R. H. Turner to supervise the building, secure subcontractors, and see that the construction went on; that he paid Turner a definite flat amount for his services; that the building was by his (Dr. Rowson's) direction; that he paid all bills after approval by Turner; that the bill for the roof construction in question was made out in his name and paid by him after being approved by Turner; that Turner incurred no expense and paid no bills for the construction of the building. Furthermore, it seems from the record that appellee Fuller recognized the relationship existing between appellant and Turner by executing the limited guarantee policy in appellant's name, in rendering invoice for the construction in name of appellant and accepting payment therefor from appellant. Evidently appellees did not look to Turner for payment.

Appellees further contend in brief on original submission and in motion for rehearing that the appellant waived guaranty of maintenance and its implication of liability for the unworkmanlike manner in which the roof was put on by appellee perforce of the contract of May 13, 1946, by accepting the subsequent specific limited guarantee policy of May 17, 1946. Issues of waiver and estoppel are not raised by pleadings of general denial; hence if there is any merit in appellees' contention it must be held effectively waived by their failure in pleadings, they having plead merely a general denial.

We adhere to our original opinion; motion for rehearing overruled.