**G. D. DOUGLASS et al., Petitioners,**

v.

**PANAMA, INC., et al., Respondents.**

No. B–3637.

Supreme Court of Texas.

Jan. 9, 1974.

Rehearing Denied Feb. 20, 1974.

Spiller & Spiller, John P. Spiller, Charles L. Black Aycock, Houston, for petitioners.

Fulbright, Crooker & Jaworski, M. W. Parse, Jr., Houston, for respondents.

DENTON, Justice,

This suit filed by G. D. Douglass and thirteen other former employees of Panama, Inc., against Panama, Inc., and its parent corporation Associated Oil & Gas Company, to recover bonuses alleged to have been promised for the year 1965. The trial court rendered a judgment non obstante veredicto for the defendants. The court of civil appeals affirmed. 487 S.W.2d 228. We affirm.

The trial court submitted a series of four identical special issues pertaining to each of the fourteen plaintiffs. In response to the special issues the jury found Panama, Inc., through its President M. E. Shiflett, agreed to pay each of the named fourteen plaintiffs a bonus for services rendered that company during the year 1965; that each named plaintiff performed services in reliance upon that agreement; the various amounts of each bonus ranging from $1,000 to $8,000; that the agreement to pay the bonuses to each named plaintiff was not conditioned upon Panama, Inc., making a substantial profit during 1965; and in response to special issue No. 57, the jury found the company made substantial profits for the year 1965. A total of $71,728.00 was found to have been promised as bonuses to the fourteen employees. The trial court rendered judgment non obstante veredicto for the defendants, and the court of civil appeals has affirmed.

Panama, Inc., was a corporation engaged in the business of constructing, building and laying pipelines for the transmission of oil, gas and other petroleum products. The business was organized a number of years ago by M. E. Shiflett, whose nickname was "Panama", who knew the business and worked along with his employees, and who learned the business of "pipelining" by many years of hard work and actual experience. Shiflett, as president of Panama, Inc., had full power and authority over the company's affairs until 1963 when 100% of Panama, Inc., was acquired by Associated Oil and Gas Com-

pany. Shiflett remained president of Panama, Inc., until his separation from the company in June 1966. It is alleged that the benefits sought by the plaintiffs here were promised by Shiflett, made to them as president of Panama, Inc.

In early 1966, Associated decided to liquidate Panama, Inc., and sell its equipment. A special meeting of the Board of Directors of Panama, Inc., convened on June 10, 1966. Shiflett testified that at that meeting he informed the Board that several of his employees were due bonuses for the year 1965, which he had promised them. The directors asked for a list of employees who were due bonuses. Shiflett prepared this list, but the Board disapproved the bonuses recommended by "Panama." Shiflett and most of the employees of Panama, Inc., were discharged at a Board meeting on June 21, 1966.

Petitioners complain of the action of the trial court in disregarding the jury's answers to special issues which found the bonuses were not conditioned upon Panama, Inc., making substantial profits in 1965. To sustain the action of the trial court in granting the motion for judgment notwithstanding the verdict, it must be determined that there is no evidence upon which the jury could have made the findings relied upon. In acting on the motion, all testimony must be considered in a light most favorable to the party against whom the motion is sought and every reasonable intendment deducible from the evidence is to be indulged in that party's favor. Leyva v. Pacheco, 358 S.W.2d 547 (Tex. 1962); Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194 (1952). Most of the petitioners had been employees of Panama, Inc., for several years. Shiflett testified that these key supervisory employees were promised, when he employed them, that there would be a salary and a bonus. It is undisputed that Panama, Inc., paid all the petitioners except Griffis, who was not employed in 1964, substantial bonuses for the year 1964 in addition to their salaries. The petitioners who testified related the agree-

ment regarding bonuses made by Panama Shiflett as "If we get this deal over, there will be a good bonus for all of us"; Now, let's get with it, do a good job and you will get a good bonus"; I hope it will be better next year"; "Your bonus will be as good or better next year"; "We were assured that we would receive as much or more than we received in 1964"; "There will be a lot more next year if we just keep a digging and get after it." Panama Shiflett corroborated the testimony of these petitioners. There is testimony these statements were made near Christmastime, in 1964, and in early 1965. However, it is alleged the original promises were made prior to the year 1965.

■ None of the ten petitioners who appeared testified that Shiflett told them the bonuses would be paid even if the company sustained a loss. The fact some of the petitioners may have "understood" profits were not a material factor is not sufficient. In fact, we think, the record supports the conclusion that bonuses promised by Shiflett were consistent with a profit concept. He testified that he told the petitioners in 1965 that "if we make some money, well, then, we would follow up on our bonuses just like we had been doing." In 1962 Panama Inc., had a net loss of $83,116.00; for that year the total bonuses paid was $3,100.00; for the year 1963 Panama Inc., had a net loss of $344,523.00, and total bonuses paid that year was $2,075.00; for the year 1964 Panama Inc., had a very profitable year, its net income that year before taxes was $1,963,335.00, and total bonuses paid that year amounted to $138,956.00. It is clear that the record shows the company paid substantial bonuses only when profits were made. By examining the petitioner's evidence in its most favorable light it is our opinion the trial court correctly disregarded the jury's answers to the special issues finding the bonuses were not conditioned upon substantial profits.

■ It is undisputed that a bonus was discussed by Mr. Shiflett and the named plaintiffs. However, with the possible exception of G. G. Griffis, no party testified that any definite amount was agreed upon between the parties. Griffis testified Shiflett told him he would get a bonus of "at least $8,000.00 or better." While Shiflett testified he informed Griffis his bonus would be "around this figure, $7,000.00 to $8,000.00." The others who testified as to the proposed amounts in such terms as: "Stay with it so we will be better next year"; or, "he said he hoped it would be better next year"; and, "do a good job and you will get a good bonus." Respondents L. W. Evans and Richard C. Allen specifically testified they had no agreement with Shiflett as to the amount of a 1965 bonus. We think the record clearly shows that the alleged bonuses offered followed no set plan or formula. They were too indefinite and uncertain to be enforceable. Restatement of Contracts, § 32; Edmunds v. Houston Lighting & Power Company, 472 S.W.2d 797 (Tex.Civ.App. writ ref'd n. r. e.); Morrow v. De Vitt, 160 S.W.2d 977 (Tex.Civ. App. writ ref'd w. o. m.); Drake v. Block, 247 Iowa 517, 74 N.W.2d 577 (1956).

■ Petitioners next challenge the holding of the court of civil appeals that Mr. Shiflett had no authority to pay the bonuses which were promised. They say Shiflett, as chief executive officer of Panama, Inc., had the express authority to pay the bonuses promised; or in the alternative, he had the apparent authority to do so. There is clearly no evidence of Shiflett's express authority to pay bonuses for the year 1965. He testified: "I have got to get the approval of the Board of Directors"; and he told more than one of the petitioners that he "had no authority to write checks for bonuses unless they gave me the authority down here." Apparent authority was not pled or submitted to the jury. Apparent authority is based on estoppel, and one seeking to charge a principal through apparent authority of an agent to bind the principal must prove such conduct on the part of the principal as would lead a reasonably prudent person to suppose that the agent had

the authority he purports to exercise. Chastain v. Cooper & Reed, 152 Tex. 322, 257 S.W.2d 422 (1953); Great American Casualty Co. v. Eichelberger, 37 S.W.2d 1050 (Tex.Civ.App. writ ref'd); Southwestern Materials Co. v. George Consol., Inc., 476 S.W.2d 454 (Tex.Civ.App. no writ hist.).

 It is also the rule that apparent authority is not available where the other contracting party has notice of the limitations of the agent's power. First National Bank of Coleman v. First National Bank of Brownwood, 278 S.W. 188 (Tex.Com. App.1925); Humble Oil & Refining Co. v. Wood, 94 S.W.2d 573 (Tex.Civ.App. no writ hist.); Tex.Jur.2d Corporations, § 337–338. We believe the court of civil appeals correctly held there is no evidence that Mr. Shiflett had authority to pay the bonuses.

In response to special issue no. 57, the jury found Panama, Inc., did make a substantial profit for the year 1965. The court of civil appeals held there was no evidence to support this finding. The financial statement of 1965, as audited by duly appointed auditors of Associated Oil and Gas Inc., and its subsidiaries including Panama, Inc., was introduced into evidence. This financial statement reflected that Panama, Inc., suffered a net loss of $296,000.00. As against this evidence Shiflett's testimony was "I made a profit in 1965;" however, he conceded that he had no records that reflected a net profit for 1965. It is evident that this testimony was not supported by the record; and we do not think that he was qualified to make the statement under the circumstances of this record. Dallas Railway & Terminal Company v. Gossett, 156 Tex. 252, 294 S.W.2d 377 (1956). Petitioner Allen, who also served as bookkeeper for Panama, Inc., was not permitted to testify to the same conclusion as that testified to by Shiflett above; however, he did testify in reference to a document which had been labeled a "preliminary statement." That report

showed a net loss of $798,000.00. Allen testified that if the $3,500,000.00 referred to in a note under the preliminary statement, had been added to the preliminary loss "you will have a nearly three million dollar profit." It was shown that this $3,500,000.00 item represented charges made by Panama, Inc., which were doubtful and disapproved by the alleged debtors. It is apparent that the $3,500,000.00 was uncollectable and was included in the final financial statement of April 22, 1966 by the accounting firm showing the loss at $296,-000.00. Allen conceded that by the time the final financial statement of Panama, Inc., was prepared these items with other companies had been settled, and that the settlement figures were included in the audited financial statements. We find no evidence to support the jury finding.

The judgments of the courts below are affirmed.